# United States District Court

## SOUTHERN DISTRICT OF INDIANA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL COMPLAINT** |
| V. | |
| **REMY HILL** | CASE NUMBER: 1:16-mj-00262 |

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. On or about April 8, 2016, in Marion County, in the Southern District of Indiana defendant did,

Make false statements and concealed a person from Arrest,

in violation of Title 18, United States Code, Sections 1001 and 1071, I further state that I am a Special Agent, and that this complaint is based on the following facts:

See attached affidavit

**Continued on the attached sheet and made a part hereof.**

_____
Special Agent Jason Hays, Internal Revenue Service

**Sworn to before me, and subscribed in my presence**

April 13, 2016                                         at   Indianapolis, Indiana
**Date**

Mark J. Dinsmore, U.S. Magistrate Judge
**Name and Title of Judicial Officer**              **Signature of Judicial Officer**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA

AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Jason L. Hays, after being first duly sworn, depose and say the following:

## INTRODUCTION

1. **Introduction.** I make this affidavit in support of an application for a criminal complaint and arrest warrant for **REMY HILL** (HILL) for violations of 18 U.S.C. §§ 1001 (false statements) and 1071 (concealing person from arrest).

2. **Your Affiant.** I am a Special Agent with the Criminal Investigation Division of the Internal Revenue Service (IRS), United States Department of the Treasury, and have been so employed since March of 2009. I have a Bachelor's degree in Accounting and Computer Science. I have received extensive training in financial investigative techniques. I have personally conducted and/or participated in numerous investigations of persons and business organizations that have violated Federal statutes, particularly those statutes found in Title 26, Title 18, and Title 31 of the United States Code. I have completed the required Special Agent training at the Federal Law Enforcement Training Center in Glynco, Georgia. My training included lessons in financial investigative techniques, accounting, tax, criminal investigation techniques, criminal law, and search warrants. I have participated in numerous search warrants.

3. **Sources of Information.** The information contained in this affidavit is based on my personal knowledge, information that I have received from other law enforcement agents assisting in this investigation, and what I have learned from the other sources specifically discussed herein. This affidavit does not purport to set forth all of my knowledge or

investigation into this case but only that which I believe is sufficient to establish probable cause as to the criminal violations described herein.

## RELEVANT CRIMINAL LAWS

4. **False Statements.** As alleged herein, there is probable cause to believe that HILL violated 18 U.S.C. § 1001, a felony, which requires that the United States prove the following elements:

> FIRST: The Defendant made a statement;
>
> SECOND: The statement was false;
>
> THIRD: The statement was material;
>
> FOURTH: The Defendant acted knowingly and willfully; and
>
> FIFTH: The Defendant made the statement in a matter within the jurisdiction of the executive branch of the government of the United States.

5. **Concealing Person from Arrest.** As alleged herein, there is probable cause to believe that HILL violated 18 U.S.C. § 1071, a felony, which requires that the United States prove the following elements:

> FIRST: A federal warrant has been issued for the fugitive's arrest following a charge for a felony offense;
>
> SECOND: The defendant had knowledge that a warrant had been issued for the fugitive's arrest;
>
> THIRD: The defendant actually harbored or concealed the fugitive; and
>
> FOURTH: The defendant intended to prevent the fugitive's discovery or arrest.

## **PROBABLE CAUSE**

6. **Cavasierre Russell.** On November 20, 2015, a federal grand jury in the Northern District of Indiana indicted Cavasierre Russell ("Russell") on nine counts of criminal false claims, in violation of 18 U.S.C. §§ 287 and 2, a felony, which makes it a crime for any person to knowingly make and present a false, fictitious, and fraudulent claim for payment against the United States. The cause number is 1:15-cr-00062-TLS-SLC. The grand jury accused Russell of filing false federal income tax returns that claimed fraudulent tax refunds. As a result of the indictment, a federal warrant issued on November 20, 2015, for Russell's arrest.

7. **Investigators Locate Russell's Car at HILL's Residence.** Since Russell's indictment, investigators attempted to locate and apprehend Russell.

   a. During that time, investigators learned that Russell drove a black 2012 Chevrolet Camaro with Texas license plate number GBN3633 and VIN number 2G1FA1E3XC9155495 (the "Camaro"), which was registered to HILL. Investigators also learned that HILL was the mother of Russell's child.

   b. On April 8, 2016 at approximately 1:30 A.M, after analyzing a series of financial transactions and other evidence, investigators located the Camaro described above at HILL's residence located at 7223 Faris Street, Indianapolis, Indiana (the "Residence"). Investigators returned to the scene at 8:00 A.M. on April 8 to continue surveillance and again saw the Camaro parked at the Residence.

   c. Investigators also observed a white Chevrolet Impala registered to HILL parked at the Residence at both 1:30 A.M. and 8:00 A.M.

   d. Investigators observed the Camaro leave the Residence at approximately 8:05 AM and return at approximately 8:50 A.M.

8. **HILL Denies that Russell is in the Residence.** At approximately 9:35 A.M., investigators knocked on the door of the Residence and, after roughly one minute, a female voice was heard asking who was at the door. The agents informed the individual that law enforcement officers were at the door. After a brief delay, a woman known to investigators as HILL opened the door. (Investigators have met HILL on previous occasions and were familiar with her BMV photo.)

   a. An investigator identified himself as a federal agent and asked to speak with Russell. HILL stated that Russell was not there. Upon being questioned further, HILL stated that Russell had been at the Residence earlier in the morning but that he had left the Residence briefly, came back, and then left again with an unknown individual driving a white car that had come to the Residence and picked him up that morning.

   b. HILL said that Russell left the Residence because he was "scared." Investigators asked HILL why Russell was scared. HILL responded that Russell knew he was supposed to turn himself in to law enforcement.

   c. Agents then asked HILL for consent to search the Residence. HILL denied the request and went inside and shut the door.

   d. The portion of Faris Street where the Residence is located is a "dead end" with only one entry point. From the time that the Camaro returned to the residence at about 8:50 A.M. until investigators knocked on the door at 9:35 A.M., surveillance was conducted on the entry point to Faris Street. Investigators did not observe any white vehicles driving on Faris Street during that timeframe.

4

9. **HILL Again Denies that Russell is in the Residence.** Ten minutes later, at approximately 9:45 A.M., HILL exited the home. Investigators again asked her if Russell was inside. HILL stated that he was not. Agents informed HILL that she could get in trouble if she was lying about Russell not being inside the Residence. HILL again stated that Russell was not inside the Residence.

10. **HILL Takes Investigators to a Local Park Ostensibly to Meet Russell.** HILL told investigators that she could take investigators to meet Russell and asked the agents to follow her in her car. HILL got in the Camaro and drove for between approximately 10-15 minutes. Investigators followed her eventually to a park located off of 27th Street in Indianapolis.

   a. HILL stated that Russell was to meet investigators at the park. Investigators remained at the park for at least thirty minutes awaiting Russell's arrival. HILL repeated that Russell had informed her that he would meet her at the park.

   b. Russell never arrived at the park.

11. **HILL Again Says that Russell Left the Residence.** While at the park, HILL repeated that Russell was not in the Residence. She said that at approximately 7:00 A.M., she briefly left the Residence to take her daughter to school. She said that prior to 7:00 A.M., Russell left the house in the Camaro, came back, and then left again with a friend.

   a. Commenting that investigators had seen the Camaro leave the Residence and drive down 42nd Street at around 8:05 A.M., the investigator asked HILL if she ever drove the Camaro down 42nd street that morning. She stated that she did not.

   b. Investigators then asked if Russell drove the Camaro after she came back from dropping her daughter at school around 7:00 A.M. She stated that he did not because he had already left the house.

5

c.     The investigator commented that he believed that it was Russell who was driving the Camaro down 42nd Street at around 8:05 A.M. HILL again stated that Russell was not in the house, that he had left earlier that morning, and that he did not drive the Camaro at 8:05 A.M. because he had already left the house.

12.    **HILL Says She Has Not Seen Russell in Months.** HILL also informed investigators that Russell had recently returned to Indianapolis from Atlanta, Georgia and that until that day she had not seen him for several months.

a.     An analysis of transactions on a prepaid debit card known to have been used by Russell showed point-of-sale transactions in Indianapolis, Indiana and Fort Wayne, Indiana throughout February and March of 2016. It did not show any point-of-sale transactions in Atlanta, Georgia or any other cities outside of Indiana.

b.     One of those transactions took place on February 10, 2016 at a retailer called American Freight. Investigators obtained and reviewed video surveillance footage from American Freight on that date and observed an individual matching HILL's description walking into the store with an individual matching Russell's description.

c.     After HILL denied having seen Russell for several months, investigators commented that the American Freight video footage showed her and Russell at American Freight on February 10, 2016. HILL then admitted that she had in fact gone to the store with Russell, but she nonetheless denied that it took place in February 2016.

d.     Investigators re-confirmed that they had a warrant for Russell's arrest.

13.    **Russell Talks to HILL and Investigators on the Phone.** While still at the park, HILL made contact with Russell by telephone and allowed investigators to speak to him. Russell

denied that he had been at 7223 Faris Street that day and stated that he was in Fort Wayne, Indiana.

14. **HILL Then Goes to the Hospital.** HILL then verbally informed an investigator that she would consent to a search of her home but that she would not do so until after she went to an "appointment" and that she would not allow the search without her being present.

   a. An investigator again told HILL that law enforcement had a warrant for Russell's arrest and that a search of her home for Russell would take only a few minutes.

   b. HILL then drove to Community East Hospital and entered the public entrance to the emergency room. She returned to her vehicle approximately two hours later.

   c. An investigator, who was waiting for her, asked if she was still willing to go back to her residence and consent to a search. She responded but her response was not audible. When asked to repeat what she said, she drove away without responding.

15. **HILL Drove to Various Locations.** HILL then drove to various locations in the Indianapolis area. She then returned to the Residence, went inside and shut the door without talking with the investigators. She re-emerged moments later with a backpack. Investigators again asked if she was going to consent to a search of her home for Russell. She did not respond, re-entered her vehicle, and drove away.

16. **Investigators Maintained Continuance Surveillance.** Throughout the day, investigators maintained surveillance on both the front and back entrances to the Residence. No activity was observed until 3:25 P.M.

7

17. **Russell Comes Out of 7223 Faris Street and Gives Himself Up.** At this time, an investigator received a phone call from a blocked phone number. The caller identified himself as Russell. Russell stated that he was inside the Residence at 7223 Faris Street. He stated that he was going to come out of the Residence. Approximately one minute later, Russell exited the residence and was placed under arrest.

## CONCLUSION

18. Based on the facts set forth in this affidavit, there is probable cause to believe HILL violated 18 U.S.C. §§ 1001 (false statements) and 1071 (concealing person from arrest).

FURTHER, YOUR AFFIANT SAYETH NOT.

_____
Jason Hays, Special Agent
Internal Revenue Service
Criminal Investigation Division

Subscribed and sworn to before me this 13th day of April, 2016.

_____
HON. MARK J. DINSMORE
United States Magistrate Judge
Southern District of Indiana

8